UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN P. HANKINS,

        Plaintiff,

v.

CITY OF INKSTER, ET AL.,

        Defendants.
_____/

Case No. 09-13395

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
R. STEVEN WHALEN

**ORDER ADOPTING REPORT AND RECOMMENDATION [155]; OVERRULING PLAINTIFF'S OBJECTION [156]; AND GRANTING PLAINTIFF'S MOTION FOR ATTORNEY FEES AND COSTS [109]**

Plaintiff John P. Hankins filed a Complaint [Dkt. 1] against Defendants City of Inkster and Gregory Gaskin on August 27, 2009, alleging discrimination in violation of federal and state law; violation of the Michigan Whistleblower's Protection Act; violation of the Michigan Open Meetings Act; conspiracy; intentional infliction of emotional distress; and hostile work environment. The case settled, and the settlement agreement was placed on the record on February 21, 2012.

Plaintiff filed the Motion for Attorney Fees and Costs [109] on April 26, 2012. The Court administratively terminated Plaintiff's motion on March 27, 2013 [140]. The Magistrate Judge entered an Order Reopening the Case [153] on March 7, 2016.

On December 8, 2017, the Magistrate Judge issued a Report and Recommendation ("R&R") [155] recommending that the Court grant Plaintiff's Motion for Attorney Fees and Costs. Specifically, the Magistrate Judge opined that the attorney fee should be divided between Barry Seifman and Raymond Guzall, with Mr. Guzall receiving 25% plus an additional $24,000.00, and Mr. Seifman receiving the remainder.

Plaintiff filed an Objection [156] to the R&R on December 21, 2017. The R&R and Objection have been fully briefed.

For the reasons explained in depth below, the Court **ADOPTS** the R&R. Plaintiff's Objection [156] is **OVERRULED**. Plaintiff's Motion for Attorney Fees and Costs [109] is **GRANTED**.

## The Report and Recommendation

The R&R summarized the record as follows:

### I. FACTS
### A. Procedural History

Plaintiff was a police officer employed by the City of Inkster. On August 27, 2009, he filed a civil complaint in this Court that included allegations of employment discrimination and retaliation [Doc. #1]. On April 10, 2010, he filed an amended complaint [Doc. #12]. Attorney Raymond Guzall III signed both the original and the amended complaint on behalf of Seifman & Guzall, P.C., the firm that Mr. Hankins retained to represent him in his case. On February 21, 2012, the case settled.[1] The present dispute over the attorney fee stems from the fact that before the settlement, Mr. Guzall left Seifman & Guzall, P.C., and continued his representation of Mr. Hankins, at Mr. Hankins' request, through his own law firm, Raymond Guzall, P.C.

---

[1] The settlement amount is subject to a confidentiality provision.

On April 26, 2012, Plaintiff filed the present Motion for Determination of Attorney Fees [Doc. #109]. On May 2, 2012, the Court ordered the Defendant to remit the funds representing the attorney fees to the Clerk of the Court "for deposit in an interest-bearing escrow account in accordance [with] Local Rule 67.1." [Doc. #112]. On the same date, the Court granted Barry Seifman's motion to intervene as a third party plaintiff [Doc. #113], and denied Plaintiff Hankins' motion to strike Mr. Seifman's motion to intervene [Doc. #112]. Mr. Seifman filed his third party complaint on May 4, 2012 [Doc. #115].

I held a status conference on October 2, 2012, at which a separate Oakland County lawsuit between Mr. Guzall and Mr. Seifman was discussed. In my Order Regarding Evidentiary Hearing [Doc. #132], I noted that "I would not permit testimony as to Mr. Guzall's allegations of pervasive wrongdoing by Mr. Seifman unrelated to this case, allegations that form the basis of a separate lawsuit pending in the Oakland County Circuit Court." I added that "[w]e will not try the Oakland County lawsuit *de facto* in the context of this evidentiary hearing on attorney fees."

On March 26, 2013, I held a settlement conference, but a resolution could not be reached.

On March 27, 2013, the Court administratively terminated this motion and held it in abeyance, permitting the motion to be reopened following the resolution of the Oakland County Circuit Court case [Doc. #140]. The case was reopened on March 7, 2016 [Doc. #153].

### B. Evidentiary Hearing Testimony

John Hankins, the Plaintiff, testified that he signed a retainer agreement with Seifman & Guzall, P.C. around July of 2009 (Tr. 25-26). The agreement provided for a 1/3 contingency fee to be paid to that law firm (Tr. 13). From the beginning, he wanted Mr. Guzall to handle his case (Tr. 40), and sometime before December of 2011 he expressed to Mr. Guzall his dissatisfaction with Mr. Seifman (Tr. 31-32, 34). After Mr. Seifman recommended accepting a settlement offer from the City of Inskter, Mr. Hankins, finding the offer unacceptable, told Mr. Guzall that he did not want Mr. Seifman to represent him (Tr. 22). Before Christmas of 2011, he and Mr. Guzall discussed the possibility that Mr. Guzall would part company

On April 26, 2012, Plaintiff filed the present Motion for Determination of Attorney Fees [Doc. #109]. On May 2, 2012, the Court ordered the Defendant to remit the funds representing the attorney fees to the Clerk of the Court "for deposit in an interest-bearing escrow account in accordance [with] Local Rule 67.1." [Doc. #112]. On the same date, the Court granted Barry Seifman's motion to intervene as a third party plaintiff [Doc. #113], and denied Plaintiff Hankins' motion to strike Mr. Seifman's motion to intervene [Doc. #112]. Mr. Seifman filed his third party complaint on May 4, 2012 [Doc. #115].

I held a status conference on October 2, 2012, at which a separate Oakland County lawsuit between Mr. Guzall and Mr. Seifman was discussed. In my Order Regarding Evidentiary Hearing [Doc. #132], I noted that "I would not permit testimony as to Mr. Guzall's allegations of pervasive wrongdoing by Mr. Seifman unrelated to this case, allegations that form the basis of a separate lawsuit pending in the Oakland County Circuit Court." I added that "[w]e will not try the Oakland County lawsuit *de facto* in the context of this evidentiary hearing on attorney fees."

On March 26, 2013, I held a settlement conference, but a resolution could not be reached.

On March 27, 2013, the Court administratively terminated this motion and held it in abeyance, permitting the motion to be reopened following the resolution of the Oakland County Circuit Court case [Doc. #140]. The case was reopened on March 7, 2016 [Doc. #153].

### B. Evidentiary Hearing Testimony

John Hankins, the Plaintiff, testified that he signed a retainer agreement with Seifman & Guzall, P.C. around July of 2009 (Tr. 25-26). The agreement provided for a 1/3 contingency fee to be paid to that law firm (Tr. 13). From the beginning, he wanted Mr. Guzall to handle his case (Tr. 40), and sometime before December of 2011 he expressed to Mr. Guzall his dissatisfaction with Mr. Seifman (Tr. 31-32, 34). After Mr. Seifman recommended accepting a settlement offer from the City of Inskter, Mr. Hankins, finding the offer unacceptable, told Mr. Guzall that he did not want Mr. Seifman to represent him (Tr. 22). Before Christmas of 2011, he and Mr. Guzall discussed the possibility that Mr. Guzall would part company

with Mr. Seifman and either start his own law firm or join another firm (Tr. 29). Mr. Guzall initiated this conversation (Tr. 30). When Mr. Hankins was informed that Mr. Guzall was starting his own firm, he told Guzall that he wanted to stay with him (Tr. 34-35). This was about two months before the scheduled trial, and Mr. Hankins did not want a new attorney to come in that late in the game (Tr. 41). Mr. Hankins testified that he wanted Mr. Guzall to handle his case regardless of whether he stayed with or left Seifman & Guzall (Tr. 40). He signed a retainer agreement with the newly-formed Law Office of Raymond Guzall, III on February 13, 2012 (Tr. 16-17). The agreement provided for a one-third contingency fee (Tr. 13, 25).

Mr. Hankins testified that he never verbally told Mr. Seifman that he no longer wanted the firm to represent him, but that he mailed a letter to that effect on January 12, 2012 (Tr. 22-24). The case settled in February of 2012, and Mr. Hankins has received all of the settlement money he was entitled to (Tr. 29).

Raymond Guzall testified that he was a shareholder in Seifman & Guzall, P.C. from 2006 until he left the firm on February 6, 2012 (Tr. 42). The first shareholder agreement (Seifman Exhibit #3) gave Mr. Guzall a 5% ownership share. The agreement provided for an annual salary of $100,000 for Mr. Guzall, and also stated:

> "Division of any surplus above salaries may occur when, in the judgment of Barry A. Seifman, adequate funds are available consistent with the respective ownership interests." (Tr. 54-55).

In addition, the agreement stated:

> "In the event there appears in the judgment of Barry A. Seifman, a situation wherein it appears that the owners cannot get along, or Raymond Guzall III seeks to separate from the Company, he shall be paid the sum of Five Dollars ($5.00) for his stock ownership and all files shall remain the property of the Company."

Over time, the agreement was amended to incrementally increase Mr. Guzall's ownership share, and before he left the firm, Mr. Guzall's ownership had increased to 25% (Tr. 55-59, 66). Mr. Guzall testified that he did not interpret the shareholder agreement as a "fee-splitting agreement,"

although he sometimes got an extra payment, on top of his salary, at the end of the year (Tr. 50-51).

Mr. Guzall testified that he contemplated leaving the Seifman & Guzall firm as early as August or September, 2011 (Tr. 43), and made the decision to leave in November of 2011 (Tr. 68). In December of 2011 he told Mr. Hankins he was thinking about leaving the firm, and also told him that he could stay with Seifman, go to another firm, or come with Guzall (Tr. 43-45).

Mr. Guzall testified that February 5, 2012 was when he first gave notice to Mr. Seifman that he was leaving. This was Super Bowl weekend, and Mr. Guzall left his written notice, along with Mr. Hankins' termination letter, on Mr. Seifman's chair (Tr. 43, 47, 70-73).[2] This was also the first time he gave Mr. Seifman Mr. Hankins' termination letter (Tr. 70). He also removed a number of physical files, including Mr. Hankins' file that weekend. He had transferred electronic files a few weeks before that (Tr. 88).

Mr. Guzall signed a lease on his new office on January 12, 2012 (Tr. 68). He incorporated Raymond Guzall, P.C. on February 1, 2012 (Tr. 75). He signed a contingent fee agreement with Mr. Hankins on February 13, 2012 (Tr. 46). The terms of the ultimate settlement were placed on the record on February 21, 2012 (Tr. 93). Mr. Guzall testified that all the time he spent on the case between the time Mr. Hankins retained Seifman & Guzall and when he left the firm was work performed as a shareholder and employee of Seifman & Guzall (Tr. 89).

Barry Seifman testified that by the time Mr. Guzall left the firm, he had risen to the level of a 25% shareholder (Tr. 104). Contrary to Mr. Guzall's testimony, Mr. Seifman considered the shareholder agreement to be a fee-splitting agreement (Tr. 107-108, 111). He testified that when a settlement or award was received in a contingent fee case, and if there were sufficient funds to make a disbursement after expenses, he would distribute according to the percentages in the shareholder agreement (Tr. 106-107). He said that in general, the proportional distribution was not done on a case-by-case basis, but based on firm's the overall aggregate profit, although the fees (after expenses) would be split earlier in the case of a large settlement (Tr.

---

[2] Super Bowl XLVI was played on Sunday, February 5, 2012.

124-126). He testified that both he and Mr. Guzall received salaries and shared in profits (Tr. 117).

Mr. Seifman testified that he did not receive Mr. Hankins' termination letter until he found it on his chair on February 6, 2012, along with termination letters from other clients (Tr. 105). This was the first time he learned that Mr. Guzall was leaving the firm, and the first time that Mr. Hankins informed him that *he* was leaving the firm and taking clients with him (Tr. 119).

**LEGAL STANDARD**

The Court must make a *de novo* determination of the portions of the R&R to which Defendants have objected. 28 U.S.C. § 636(b)(1)(C). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

"The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to complete failure to object." *Cole v. Yukins*, 7 F. Appx. 354, 356 (6th Cir. 2001). "'[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings . . . believed in error' are too general." *Novak v. Prison Health Services, Inc.*, No. 13-11065, 2014 WL 988942, at *3 (E.D. Mich. Mar. 13, 2014) (quoting *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)).

**ANALYSIS**

The Magistrate Judge determined that the shareholder agreement between Mr. Seifman and Mr. Guzall was effectively a fee-splitting agreement. The

Magistrate Judge decided that it was reasonable to award Mr. Guzall for 80 hours of work, at $300.00 per hour, on Plaintiff's case. This means that Mr. Guzall would receive an award of 25%, plus $24,000.00 ($300 x 80), with the remaining portion of the fee going to Mr. Seifman.

Mr. Guzall launches a number of objections to the R&R. He contends that the Magistrate Judge erred in his calculation of the attorney fee. He also claims that the R&R violates the law because it fails to address Mr. Seifman's alleged breach of agreements and illegal acts. He argues that the R&R violates the Magistrate Judge's January 3, 2013 Order [132], which set forth the parameters of the January 23, 2013 evidentiary hearing. Mr. Guzall also asserts that the Magistrate Judge erred in determining that "Seifman had any claim against attorney Guzall." (Dkt. 156 at 9). He further maintains that the Magistrate Judge wrongfully denied his right to be reimbursed for "extended costs" in this case, and that he was denied the opportunity to present the amount of his hourly rate and the number of hours he worked on the case.

Mr. Guzall's arguments are unavailing. Many of the objections relate to an Oakland County Circuit Court case concerning the dissolution of Mr. Guzall's and Mr. Seifman's law firm. Mr. Guzall's objections rely on underlying claims that were already litigated – and decided upon – in the Michigan state courts. In addition, Mr. Guzall simply rehashes many of his previous arguments; objections

to an R&R are not meant as a vehicle to simply restate previous arguments already considered. *Wade v. Berryhill*, No. 16-10042, 2017 WL 8355590, at *1 (E.D. Mich. Mar. 3, 2017) (citing *Davis v. Caruso*, No. 07-10115, 2008 WL 540818, at *2 (E.D. Mich. Feb. 25, 2008)).

## I. The calculation of the attorney fee

As stated in his earlier briefs, Mr. Guzall contends that the shareholder agreements were not fee splitting agreements. Finding otherwise, he says, was clear error. He also takes issue with the Magistrate Judge's reliance on non-binding cases.

The Court finds no clear error in the Magistrate Judge's thorough fact finding. It doesn't matter, as the Magistrate Judge recognized, that the shareholder agreements did not contain the words "fee splitting agreement"; the shareholder agreement's 75/25 ownership provision provides that Mr. Seifman should receive 75% of the attorney fee in this case. The agreement also contained the following provision:

> Division of any surplus above salaries may occur when, in the judgment of Barry A. Seifman, adequate funds are available consistent with the respective ownership interests.

(Dkt. 111-3).

Mr. Guzall testified that at the time he left the firm, he "was a 25 percent shareholder, slash, stockholder in the firm." (Tr. 51:16-17, 59:20-22). Mr. Guzall

said that, in addition to receiving a salary, "there were times either at the end of the year or the beginning of the year, depending on the full amount brought into the law firm, there may have been monies paid out" to himself and Mr. Seifman. *Id.* at 51:22-25. Similarly, Mr. Seifman testified that "when there is sufficient funds to make a disbursement and not put the firm in jeopardy . . . [I] would then distribute according to what the share of each of us were." *Id.* at 106:24-25, 107:1-4. This is, effectively, fee splitting: when extra money came in to the firm, it was split up and paid out depending on each person's share.

*Kohl, Harris, Nolan & McCarthy, P.C. v. Peters*, 2008 WL 183294 (Mich. Ct. App. Jan. 22, 2008), though unpublished, is informative on this issue. There, Defendant Peters and his former law partner, Harris, formed a law firm. They entered into a Memorandum of Buy-Sell Agreement and a Shareholder Employment Agreement, which provided that "if a shareholder voluntarily terminated his employment with the firm and took an unfinished contingency case, the terminating attorney would be obligated to pay the remaining shareholder(s) one-third of the collected attorney fee, plus costs incurred by the firm." *Id.* at *1.

One year later, Kohl joined the firm as an independent contractor. "Kohl did not become a shareholder or employee of the corporation." *Id.* Rather, he entered into a verbal contractual fee-splitting agreement that "was not reduced to writing, but was honored and implemented in practice over the years." *Id.*

The firm agreed to represent the Werthman Group in 1998. Peters entered into the contingency agreement with the Werthman Group on the firm's behalf, but Kohl did a significant amount of work on the case.

Two years later, Peters left the firm and, with his former partners' consent, took the Werthman case with him. *Id.* Shortly thereafter, Peters' former firm filed suit against Peters to recover Kohl's portion of the fee. Peters argued that he was "not obligated to compensate Kohl under the fee-splitting agreement between his former law firm and Kohl." *Id.* at *2.

The Michigan Court of Appeals rejected Peters' argument. It noted that "had [Peters] continued his employment with the firm, Kohl would have received 50 percent of the net contingency fee." *Id.* Additionally, "[w]hen Peters terminated his employment with the firm and took the Werthman case with him, the existing contractual obligation to pay Kohl 50 percent of the net contingency fee continued and was not modified in any way." *Id.* The court, citing to a number of out-of-state cases, stated:

> [A] majority of jurisdictions treat a pending contingent-fee case taken by a terminating attorney as an asset of the originating firm and that, upon collection of the contingency fee, the terminating attorney has a continuing fiduciary duty in regard to fee splitting, and must comply with the terms of any applicable fee splitting agreement.

*Id.* at *3 (internal citations omitted).

Like Defendant Peters, Mr. Guzall "took a corporate asset (the [Hankins] case) from the firm, which remained subject to existing contractual agreements with others." *Id*. "When he took the case, [Guzall] was required to honor the existing contractual obligation . . . as nothing modified or obviated that agreement." *Id.*

The Court is well aware that *Kohl* is not precisely on point with this situation. That said, there is nothing defective about the Magistrate Judge's reasoning. As the Magistrate Judge concluded, *Kohl* indicates that a shareholder agreement that allocates a percentage ownership to each shareholder operates as a fee-splitting agreement. (R&R at 9, n.3).

Finally, Mr. Guzall's protestations of the Magistrate Judge's references to non-Michigan case law are without merit. Unpublished and non-binding decisions "may be considered for their persuasive value." *Peguese v. PNC Bank, N.A.*, 306 F.R.D. 540, 544 (E.D. Mich. 2015) (quoting *United States v. Keith*, 559 F.3d 499, 505 (6th Cir. 2009)). Additionally, "[n]on-binding decisions can have great utility when binding decisions on the contested issues are scarce, and where the unpublished decision addresses exactly, or almost exactly the same issue as the court confronts." *Smith v. Astrue*, 639 F.Supp. 2d 836, 842 (W.D. Mich. 2009).

## II. The R&R's failure to address Mr. Seifman's alleged breach of agreements and illegal acts

Mr. Guzall contends that the Magistrate Judge failed to determine the issues of Mr. Seifman's alleged breach of agreements and illegal acts.

Mr. Seifman filed suit against Mr. Guzall in Oakland County Circuit Court on February 17, 2012. On May 13, 2015, at the conclusion of a hearing on Mr. Seifman's motion for summary disposition, Oakland County Circuit Court Judge Daniel P. O'Brien found that Mr. Guzall removed the client files from Mr. Seifman's law offices. Mr. Guzall and Mr. Seifman entered into case evaluation that same day. (Dkt. 157-4).

On July 13, 2015, Judge O'Brien issued two orders. The first stated that Mr. Guzall "improperly removed the physical client files from the law offices of Barry A. Seifman P.C." (Dkt. 157-2). The second stated "that all pending claims have been resolved by the Parties [sic] acceptance of their applicable case evaluations and this order resolves the last pending claim and closes the case." (Dkt. 157-3). Mr. Guzall appealed Judge O'Brien's decision, which was ultimately affirmed by the Michigan Court of Appeals.[3]

Mr. Guzall's objections concerning the Magistrate Judge's failure to rule on Mr. Seifman's alleged breach of agreements and illegal acts are merely improper attempts to circumvent the findings and conclusions of the Michigan state courts.

---

[3] The Michigan Supreme Court denied Mr. Guzall's request for leave to appeal.

Mr. Guzall had ample opportunity to litigate these claims in the state court case, which lasted more than three years. The Michigan Court Rules, as well as the Michigan Supreme Court, clearly provide that, "upon both parties' acceptance of a case evaluation, the judgment entered pursuant to that evaluation 'shall be deemed to dispose of all claims in the action.'" *CAM Const. v. Lake Edgewood Condominium Ass'n*, 465 Mich. 549, 554 (2002) (citing MCR 2.403(M)(1)). While it is true that Mr. Guzall and Mr. Seifman agreed to exclude the attorney fee issue in this case from the Oakland County litigation, it is also true that Mr. Guzall has no basis to claim that Mr. Seifman breached agreements or committed illegal acts, as he previously agreed to dispose of those claims in the Oakland County case.

### III. The R&R's violation of the Magistrate Judge's January 3, 2013 Order Regarding Evidentiary Hearing [132]

Mr. Guzall asserts that the Magistrate Judge violated his previous order when he failed to award Mr. Seifman monies under *quantum meruit*.

On January 3, 2013, the Magistrate Judge entered an Order Regarding Evidentiary Hearing [132], in which he set forth the date, time, and scope of the hearing, as well as permissible topics about which the witnesses could testify. The Magistrate Judge prohibited all "testimony as to Mr. Guzall's allegations of pervasive wrongdoing by Mr. Seifman unrelated to this case." *Id.* at 2. He reiterated that he would "not try the Oakland County lawsuit *de facto* in the context of this evidentiary hearing on attorney fees." *Id.* The Magistrate Judge confined the

hearing to six main issues, including the shareholder agreements between Mr. Guzall and Mr. Seifman, "the attorney time expended in this case by Mr. Guzall and Mr. Seifman . . . and whether Mr. Seifman should take any portion of the fee under *quantum meruit*." *Id.* at 3.

On January 23, 2013, the Court denied Mr. Guzall's Objection [133] to the Magistrate Judge's Order. That same day, the Magistrate Judge conducted the evidentiary hearing according to the terms of the previous Order.

Contrary to Mr. Guzall's position, the Magistrate Judge never said that the Court would only award monies to Mr. Seifman under the doctrine of *quantum meruit*. The Order Regarding Evidentiary Hearing [132] makes clear that the purpose of the hearing is to determine "the manner in which attorney fees in [Plaintiff's] case would be apportioned." *Id.* at 2. In order to accomplish this goal, the Magistrate Judge correctly considered both the shareholder agreements and the principles of *quantum meruit*, as well as the lawyers' hourly rates and time spent on Hankins' case.

### IV. The Magistrate Judge's determination that "Seifman had any claim against attorney Guzall."

Mr. Guzall claims that the R&R improperly "illustrates a determination against Guzall and not as against Mr. Hankins." (Dkt. 156 at 9). The Court is unclear as to Mr. Guzall's exact argument, but in any event, Mr. Guzall agreed that this Court, rather than the Oakland County Circuit Court, would decide the

attorney fee issue. (Dkt. 157-6 at 3). In addition, attorney "fees are part of the overall costs of the underlying litigation. Resolution of related fee disputes is often required to provide a full and fair resolution of the litigation." *Kalyawongsa v. Moffett*, 105 F.3d 283, 288 (6th Cir. 1997).

V. **Mr. Guzall's right to be reimbursed for extended costs, and the presentation of his hourly rate and the number of hours he worked on the case**

Mr. Guzall submits that the Magistrate Judge erred by failing to consider "monies paid by Guzall in the Hankins [sic] case." (Dkt. 156 at 22). Such a conclusory, generalized statement is insufficient to sustain this objection.

Mr. Guzall also argues that he was denied a fair opportunity to "properly present" the actual amount of his hourly attorney rate and the number of hours he worked. *Id.* at 23. This is completely nonsensical given that, prior to the evidentiary hearing, the Magistrate Judge informed the parties that the testimony at the hearing would be confined to, among other things, "[t]he attorney time expended in this case by Mr. Guzall and by Mr. Seifman," as well as "the hourly rates charged by Mr. Guzall and by Mr. Seifman." (Dkt. 132 at 3).

CONCLUSION

The Court having reviewed the record, the Report and Recommendation [155] is hereby **ADOPTED** and entered as the findings and conclusions of the Court. Accordingly,

**IT IS ORDERED** that Plaintiff's Objection [156] is **OVERRULED**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Attorney Fees and Costs [109] is **GRANTED**.

**IT IS FURTHERED ORDERED** that the attorney fee shall be divided between Barry Seifman and Raymond Guzall, with Mr. Guzall receiving 25% plus an additional $24,000.00, and Mr. Seifman receiving the remainder.

**SO ORDERED**.

Dated: May 16, 2018

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge